**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| KALDREN LLC, | |
| Plaintiff, | No. 5:17-cv-00067-RWS-CMC |
| v. | **JURY TRIAL DEMANDED** |
| GENERAL MILLS, INC., | |
| Defendant. | |

**DEFENDANT GENERAL MILLS, INC.'S MOTION TO DISMISS**
**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND .................................................................................................. 2

    A.    The Patents and Asserted Claims ............................................................. 2

    B.    The Complaint and the Accused Product .................................................. 5

III.   THE COMPLAINT DOES NOT ADEQUATELY PLEAD DIRECT
      INFRINGEMENT .............................................................................................. 7

    A.    The Pleading Standard ............................................................................... 7

    B.    Because Kaldren's Complaint Alleges No Method Performed by General
        Mills, and No "Communication System" Used by General Mills, It Fails to
        Present a Cause of Action that is Plausible on its Face. ............................. 8

    C.    Kaldren's Infringement Allegations Fail to Specifically Identify Which
        General Mills Products are Accused, Making Any Assessment of
        Infringement Impossible. ........................................................................... 9

IV.    THE PATENTS-IN-SUIT ARE DIRECTED TO INELIGIBLE SUBJECT
      MATTER UNDER 35 U.S.C. § 101 ............................................................... 10

    A.    Motions to Dismiss for Patent Invalidity Under 35 U.S.C. § 101 Are Proper. ......... 10

    B.    Abstract Ideas Are Ineligible For Patent Protection Under 35 U.S.C. § 101. ........... 11

    C.    The Patents-in-Suit Are Ineligible for Patent Protection. ........................ 13

        1.    Step One: The Asserted Claims Are Directed to an Abstract Idea. ........ 13

        2.    Step Two: The Asserted Claims Lack an Inventive Concept. ......... 15

        3.    Risk of Preemption Confirms the Invalidity of the Asserted Claims .............. 18

V.     CONCLUSION ................................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Alice Corp. v. CLS Bank.*
134 S. Ct. 2347 (2014)............................................................11, 12, 13, 15, 16, 18

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009)...........................................................................................7, 9

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.),*
687 F.3d 1266 (Fed. Cir. 2013).............................................................................10

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,*
827 F.3d 1341 (Fed. Cir. 2016).............................................................................16

*Becton, Dickinson & Co. v. Baxter Int'l Inc.,*
No. 1-14-cv-00222, 2015 U.S. Dist. LEXIS 112834 (W.D. Tex. Aug. 3, 2015) ...................18

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 570 (2007).........................................................................................7, 8, 9

*Bilski v. Kappos,*
561 U.S. 593 (2010)........................................................................10, 11, 13, 18

*buySAFE, Inc. v. Google, Inc.,*
765 F.3d 1350 (Fed. Cir. 2014).............................................................................17

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
776 F.3d 1343 (Fed. Cir. 2014).............................................................................10

*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011).............................................................................10

*DDR Holdings. DDR Holdings, LLC v. Hotels.com, L.P.,*
773 F.3d 1245 (Fed Cir. 2014)..............................................................................17

*Digitech Image Tech., LLC v. Electronics for Imaging, Inc.,*
758 F.3d 1344 (Fed. Cir. 2014)........................................................................12, 18

*Elec. Power Grp., LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016).............................................................................12

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
839 F.3d 108 (Fed. Cir. 2016).........................................................................12, 13

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ................................................................................................11, 18

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) .......................................................................................18

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ..................................................................................10, 12

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ................................................................................14, 17

*Intellectual Ventures I v. Capital One Bank*,
    792 F.3d 1363 (Fed. Cir. 2015) ................................................................................15, 16

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) .....................................................................................11

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) .................................................................................7, 8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ........................................................................................11, 12, 17

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 537 (2007) .............................................................................................7, 9, 12

*Realtime Data, LLC v. Stanley*,
    721 F. Supp. 2d 538 (E.D. Tex. 2010) ...........................................................................9

*Recognicorp v. Nintendo Co.*,
    No. 2016-1499, 2017 U.S. App. LEXIS 7528 (Fed. Cir. Apr. 28, 2017) ..................13, 14, 16

*Secure Mail Solutions LLC v. Universal Wilde, Inc.*,
    169 F.Supp. 3d 1039 (C.D. Cal. 2016) .........................................................................15

*Synopsis, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) .....................................................................................16

*Ultramercial, Inc. v. Hulu*,
    LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ..................................10, 15, 17

*Uniloc USA, Inc. v. AVG Techs., USA, Inc.*,
    No. 2:16-cv-00393-RWS, 2017 U.S. Dist. LEXIS 45125 (E.D. Tex. Mar. 28,
    2017) ............................................................................................................................16

## Statutes

35 U.S.C. § 101 .................................................................................1, 2, 10, 11, 12, 19

35 U.S.C. § 271(a) ......................................................................................................8

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................7, 9

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 7, 10

87714806.4

## I.    INTRODUCTION

Plaintiff Kaldren LLC ("Kaldren") filed a Complaint against defendant General Mills, Inc. ("General Mills") on March 23, 2017, accusing General Mills of infringing U.S. Patent Nos. 6,098,882 ("the 882 patent"), 6,176,427 ("the 427 patent"), 6,820,807 ("the 807 patent"), and 8,281,999 ("the 999 patent") (collectively, the "Patents-in-Suit"). General Mills hereby moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) as failing to state a claim upon which relief can be granted.

The Patents-in-Suit are all entitled "Variable Formatting of Digital Data Into a Pattern." (Dkt. No. 1, ¶¶ 7-10). In its Complaint, Kaldren alleges direct infringement of four patent claims—three method claims and a claim covering a "communication system." Yet Kaldren alleges no method performed by General Mills at all, let alone a method that infringes any of its patent claims. And Kaldren alleges no "communication system" made, used, sold, offered for sale, or imported by General Mills. While Kaldren does not have to prove its case in the pleadings, it *is* required to plead sufficient facts to make its direct infringement claim facially plausible. Because Kaldren has failed to do so, its Complaint should be dismissed.

General Mills also moves to dismiss Kaldren's Complaint under Fed. R. Civ. P. 12(b)(6) because the patent claims encompass patent-ineligible subject matter in violation of 35 U.S.C. § 101. Patent eligibility under Section 101 is a question of law and ripe for determination at this stage. Under Kaldren's characterization of the claims asserted in its Complaint, the scope of those claims (which are accepted as true for the purposes of this motion to dismiss) is so broad that no plausible construction would make the claims patent-eligible. The formatting of digital data into a pattern is not new. Neither is encoding or decoding of digital data.

Preemption "undergirds" the Supreme Court's Section 101 analysis. Kaldren's patents do no more than withdraw a basic idea (encoding or decoding of data formatted into a pattern) from the public domain. The preemptive footprint of the Patents-in-Suit—which Kaldren reads so broadly so as to purportedly cover QR Codes, even though there is no mention of QR Codes in the specification—warrants a finding of invalidity.

## II.   BACKGROUND

### A.   The Patents and Asserted Claims

According to the Abstract of the Patents-in-Suit, the patents are directed to a "method of formatting digital data and a method of decoding the formatted digital data" using "user selectable format parameters" which "vary the dimensions and other attributes of spots and the cells containing those spots" which the "formatting process formats into a pattern." (Dkt. No. 1-1, Ex. A, Abstract). In its Complaint, Kaldren asserts four patent claims—one from each patent. Of those four claims, three are method claims: "a method of encoding data," "a method of decoding digital data," and "a method of retrieving an information resource." (Dkt. No. 1, ¶¶ 17, 24, 3). The fourth asserted patent claim covers "a communication system." *Id.* at ¶ 38. Kaldren has only asserted claims of direct infringement.

All four of the Patents-in-Suit share a similar specification, which describes one of the objectives of the invention as "a method that writes and reads digital data on paper and other media using off-the-shelf personal computers and peripherals, and achieves the full carrying capacity these off-the-shelf components can sustain." (Dkt. No. 1-1, Ex. A, col. 4: 5-9; Dkt. No. 1-2, Ex. B, col. 4: 20-24; Dkt. No. 1-3, Ex. C, col. 4: 21-25; Dkt. No. 1-4, Ex. D, col. 4: 23-26). The specification further describes the invention as "act[ing] as a channel for digital communication the ability to link the printed page to the electronic world can be accomplished in

any manner in which instructions can be digitized." (Dkt. No. 1-1, Ex. A, col. 50:12-14; Dkt. No. 1-2, Ex. B, col. 50:20-23; Dkt. No. 1-3, Ex. C, col. 50:14-16; Dkt. No. 1-4, Ex. D, col. 49:23-26).

The specification of the Patents-in-Suit admits that "the prior art discloses methods for placing machine readable information on media such as paper." (Dkt. No. 1-1, Ex. A, col. 50:51-53; Dkt. No. 1-2, Ex. B, col. 50:20-23; Dkt. No. 1-3, Ex. C, col. 1:51-53; Dkt. No. 1-4, Ex. D, col. 49:23-26). The specification also concedes that the idea of formatting data into patterns is not new. An example provided by the specification of "digital information being stored on paper is the use of bar codes." (Dkt. No. 1-1, Ex. A, col. 1:47-48; Dkt. No. 1-2, Ex. B, col. 1:59-60; Dkt. No. 1-3, Ex. C, col. 1:60-61; Dkt. No. 1-4, Ex. D, col. 1:65-66). Two-dimensional codes are also in the prior art. (Dkt. No. 1-1, Ex. A, col. 1:50-54; Dkt. No. 1-2, Ex. B, col. 1:62-66; Dkt. No. 1-3, Ex. C, col. 1:63-67; Dkt. No. 1-4, Ex. D, col. 2:1-5; *see also* Ex. 1, U.S. Patent No. 5,726,435).[1]

None of the asserted claims provides any meaningful limitations on the idea of formatting or encoding digital data into a pattern and then decoding the digital data from said pattern. The third column below identifies generic computing concepts of the asserted claims:

| Claim Element | Claim Language | General Computing Concept |
|---|---|---|
| **'882 patent** | | |
| 1 (preamble) | A method of encoding on a substrate as digital data comprising: | |
| 1.a | formatting the data into a series of digital data values wherein said series of digital data values are formatted into a pattern comprising a plurality of spaces at least some of which have dimensions M pixels by N wherein at least one bit in said series of digital data values are represented in each of said plurality of spaces where at least one logical state is expressed by the presence in the space of a spot of a spot size with dimensions X pixels by Y pixels and at least one other logical state is expressed by the | Formatting data |

---

[1] Exhibit 1 is attached to the Declaration of Kristine Tietz submitted herewith.

|  | absence of a spot with dimensions X pixels by Y pixels from the space and where at least one of dimensions M, N, X, and Y is capable of differing from at least one other of the dimensions M, N, X, and Y; and |  |
|---|---|---|
| 1.b | outputting said pattern onto at least one substrate, such that the data is represented in digitized form on said at least one substrate. | Outputting data |
| **'427 patent** | | |
| 26 (preamble) | A method of decoding digital data from a pattern wherein the pattern comprises a plurality of spaces at least some of which can contain a spot that represents at least one bit of said digital data, and wherein at least one way in which digital data is encoded within said pattern is by the presence in at least one space of a spot with at least one attribute different from at least one attribute of the space, such method comprising: | Organizing and formatting data |
| 26.a | (a) determining the at least one attribute of at least one space of spot which might be contained within the at least one space; and | Analyzing data |
| 26.b | (b) decoding at least one bit of data using information obtained in step (a) | Decoding data |
| **'807 patent** | | |
| 20 (preamble) | A method for retrieving an information resource, the method comprising: | |
| 20.a | scanning a machine readable indicia comprising digital data values formatted into a two-dimensional pattern; | Scanning data |
| 20.b | extracting an address of the information resource from the machine readable indicia; and | Extracting data |
| 20.c | retrieving the information resource for presentation to a user. | Retrieving data |
| **'999 patent** | | |
| 1 (preamble) | A communication system comprising: | |
| 1.a | processing means for decoding a machine-readable code formatted into a two dimensional pattern where that machine-readable code contains contact information, whereby the contact information is derived, | Processing data |

87714806.4

| 1.b | communicating means for communication where said communicating means communicates using the contact information derived from the processing means, and | Communicating data |
|---|---|---|
| 1.c | networking means for communicating with other computers in the network, and where the machine-readable code which contains digital data comprising contact information further comprises digital data for communication with other computers on said network. | Communicating data with other computers on a network |

As shown above, the asserted claims recite generic functional steps of a standard computer.

### B.   The Complaint and the Accused Product

As to an accused product, Kaldren only alleges that "Defendant's 'Accused Product' is its Quick Response ('QR') Codes that it uses with its products and services." (*Id.* at ¶ 14). But Kaldren does not explain how a QR Code itself can constitute a "method of encoding data," "a method of decoding data," "a method of retrieving an information source," or "a communication system," all of which are required by the asserted claims. In fact, Kaldren points to no General Mills method at all, and no "communication system" associated with General Mills. Moreover, Kaldren does not identify any General Mills product or service upon which any QR Codes are actually placed.

In addition, Kaldren presents no plausible theory that, even if General Mills was performing some method or using some "communication system" related to QR Codes, such method or system leads to the results described in the claims. Instead, Kaldren's allegations amount to nothing more than parroting the claim language (in bold below). For example, Kaldren asserts that General Mills infringes claim 1 of the '882 Patent by making, using (including testing), offering for sale, selling, or importing its "Accused Product," which allegedly:

> provides a **method of encoding data** (e.g., QR Codes) **on a substrate** (e.g., a digital screen or printed paper) **as digital data comprising**:

**formatting the data into a series of digital data values** (e.g., the QR Codes representing date in a series of digital values) **wherein said series of digital data values are formatted into a pattern comprising a plurality of spaces** (e.g., the QR Codes are formatted into a pattern comprising a plurality of spaces) **at least some of which have dimensions M pixels by N pixels** (e.g., the QR Code patterns have dimensions of M pixels wide by N pixels tall) **wherein at least one bit in said series of digital data values are represented in each of said plurality of spaces** (e.g., the QR Codes have at least one bit in said series of digital data values that are represented in each of said plurality of spaces, i.e., each space represents a digital bit) **where at least one logical state is expressed by the presence in the space of a spot of a spot size with dimensions X pixels by Y pixels** (e.g., the QR Codes have at least one logical state expressed by the presence in the space of a spot of a spot size with dimensions X pixels by Y pixels, i.e., the dark spots are X pixels wide by Y pixels tall and represent logical 1s) **and at least one other logical state is expressed by the absence of a spot with dimensions X pixels by Y pixels from the space** (e.g., the QR Codes have at least one other logical state expressed by the absence of a spot with dimensions X pixels by Y pixels from the space, i.e., the light spots are X pixels wide by Y pixels tall and represent logical 0s) **and where at least one of dimensions M, N, X, and Y is capable of differing from at least one other of the dimensions M, N, X, and Y** (e.g., the QR Codes having differing M, N, X, and Y dimensions); **and outputting said pattern onto at least one substrate, such that the data is represented in digitized form on said at least one substrate** (e.g., the QR Codes are outputted onto a digital screen or printed paper).

(*Id.*, ¶ 17). While the claim requires "spaces at least some of which have dimensions M pixels by Y pixels," Kaldren provides no actual dimensions of spaces in any QR code purportedly made, used, sold, offered for sale, or imported by General Mills. And while the claim requires "outputting said pattern onto at least one substrate," Kaldren only alleges that "QR codes are outputted onto a digital screen or printed paper." What "digital screen"? What "printed paper"? Plaintiff similarly parrots the language for the remaining three asserted claims. (*See id.* at ¶¶ 24, 31, 38.)[2]

---

[2] This language is identical in related complaints against Citigroup Inc., J.D. Power and Associates, NeilMed Pharmaceuticals, Inc., Pioneer Electronics (USA), Inc., The Proctor & Gamble Company, and SunTrust Banks, Inc., filed in this Court on the same date. *See* 5:17-cv-00066, Dkt. No. 1, ¶¶ 17, 24, 31, 38; 5:17-cv-00068, Dkt. No. 1, ¶¶ 17, 24, 31, 38; 5:17-cv-00069, Dkt. 1, ¶¶ 17, 24, 31, 38; 5:17-cv-00070, Dkt. No. 1, ¶¶ 17, 24, 31, 38; 5:17-cv-00071, Dkt. No. 1, ¶¶ 17, 24, 31, 38; 5:17-cv-00072, Dkt. No. 1, ¶¶ 17, 24, 31, 38.

87714806.4

## III.  THE COMPLAINT DOES NOT ADEQUATELY PLEAD DIRECT INFRINGEMENT

### A.    The Pleading Standard

On December 1, 2015, the Federal Rules of Civil Procedure were amended to abrogate Form 18. In the absence of Form 18, claims of direct patent infringement are subject to the pleading standards set forth by the Supreme Court in *Twombly* and *Iqbal*. That standard requires the plaintiff to plead "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When pleading a claim of direct infringement of a method claim, a plaintiff must allege that the accused infringer performs all steps of the claimed method. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) ("To infringe a method claim, a person must have practiced all steps of the claimed method"). In addition, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. Without providing sufficient factual allegations in the complaint, a plaintiff satisfies neither the requirement of providing "fair notice" of the nature of the claim nor the requirement of stating the "grounds" upon which the claim rests. *Id*.

Because Kaldren's Complaint fails to identify any General Mills method or "communication system" that allegedly infringes any claim of the Patents-in-Suit and fails to specifically identify facts necessary to support any theory or direct infringement, as required by Fed. R. Civ. P. 8, *Twombly*, and *Iqbal*, this Court should dismiss Kaldren's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

B.   **Because Kaldren's Complaint Alleges No Method Performed by General Mills, and No "Communication System" Used by General Mills, It Fails to Present a Cause of Action that is Plausible on its Face.**

Kaldren's Complaint asserts only direct infringement under 35 U.S.C. § 271(a). (Dkt. No. 1, ¶¶ 17, 24, 31, 38). Therefore, as to each of the three asserted method claims, the Complaint must allege and plausibly substantiate that General Mills performs each and every step of the patented methods. *Lucent Techs.*, 580 F.3d at 1317. The Complaint fails to do that. Instead, the Complaint identifies QR Codes as the "Accused Product," and makes no allegation that General Mills performs an encoding process to create these codes and output them onto a substrate (*see* Dkt. No. 1, ¶ 17), no allegation that General Mills performs a decoding process to decode any data in these QR Codes (*see* Dkt. No. 1, ¶ 24), and no allegation that General Mills performs a retrieving process to retrieve any information from these QR Codes (*see* Dkt. No. 1, ¶ 31). Put simply, Kaldren does not allege that General Mills performs any step of any asserted method claim.

Similarly, for the "communication system" claim of the '999 patent, the Complaint again identifies QR Codes as the "Accused Product." (*See* Dkt. No. 1, ¶ 38). And Kaldren again accuses General Mills of only direct infringement. *Id.* But the Complaint makes no allegation that General Mills makes, uses, sells, offers for sale, or imports the "communications system" of the claim. *Id.* Instead, Kaldren points to a scanner and a smartphone as meeting the elements of the claim, none of which are alleged to be made, used, sold, offered for sale, or imported by General Mills. *Id.*

Because Kaldren has failed to plead sufficient facts to state a facially plausible claim that General Mills performs any of the claimed methods, or performs any infringing activity with respect to the claimed "communication system," its Complaint should be dismissed. *Twombly*, 550 U.S. at 570.

8

**C.    Kaldren's Infringement Allegations Fail to Specifically Identify Which General Mills Products are Accused, Making Any Assessment of Infringement Impossible.**

Kaldren fails to provide notice of its claims as required by Rule 8, *Twombly* and *Iqbal* because it does not identify with any specificity the products accused of infringement. Instead of naming any specific product, Kaldren vaguely accuses "Defendant's . . . Quick Response ('QR') Codes that it uses with its products and services" (Dkt. No. 1, ¶ 14). Kaldren fails to identify any QR Code product or a product or service using a QR Code offered by General Mills.

This allegation accusing "Defendant's . . . Quick Response ('QR') Codes that it uses with its products and services" is so vague and ambiguous as to be meaningless. The allegation is devoid of any facts and is, in effect, nothing more than an indefinite and ambiguous conclusion arguably implicating General Mills' entire product line. This is insufficient pleading under Rule 8. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."); *Iqbal*, 556 U.S. at 678-79 ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

This absence of specificity makes it impossible to tell what products are at issue and fails to give General Mills notice of its alleged infringement or provide a plausible basis for finding infringement of any claim of the Patents-in-Suit. *See Realtime Data, LLC v. Stanley*, 721 F. Supp. 2d 538, 543 (E.D. Tex. 2010) (dismissing direct infringement claim accusing "data compression products and/or services" because accused product description was too vague). Since Kaldren's bare assertion leaves General Mills with no option but to guess at what is accused of infringement, its Complaint should be dismissed.

## IV.   THE PATENTS-IN-SUIT ARE DIRECTED TO INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101

### A.   Motions to Dismiss for Patent Invalidity Under 35 U.S.C. § 101 Are Proper.

Whether the Patents-in-Suit are directed to ineligible subject matter under 35 U.S.C. § 101

is a "threshold test." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Indeed, the Federal Circuit has

"recognized that subject matter eligibility is the primal inquiry, one that must be addressed at the

outset of litigation." *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718 (Fed. Cir. 2014)

(Mayer, J., concurring). Patent eligibility under Section 101 is a question of law. *CyberSource*

*Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011). Accordingly, this Court

may resolve the issue of patent eligibility under Section 101 by way of this motion to dismiss.

*See, e.g., In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016) (affirming

dismissal under Rule 12(b)(6)); *Content Extraction & Transmission LLC v. Wells Fargo Bank*,

776 F.3d 1343, 1345 (Fed. Cir. 2014) (same).

While claim construction may at times be desirable to resolve whether a patent claim is

directed to patent-eligible subject matter, the Federal Circuit has explained that "claim

construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp*

*Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2013).

Where the court has a "full understanding of the basic character of the claimed subject matter,"

the question of patent eligibility may properly be resolved on the pleadings. *Content Extraction*,

776 F.3d at 1349 (affirming dismissal under Section 101 without having a claim construction

hearing). Here, Kaldren has conceded a "plain reading" of the Complaint, Patents-in-Suit, and

the asserted claims is sufficient. (*See* Dkt. No. 1, ¶¶ 19, 26, 33, 40). Considering the issue of

patent eligibility now will save the Court and the litigants resources if the Court grants General

Mills' motion by avoiding unnecessary discovery and claim construction on patent claims that are not eligible for protection.

## B.   Abstract Ideas Are Ineligible For Patent Protection Under 35 U.S.C. § 101.

Under Section 101, an inventor may obtain a patent on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized that "laws of nature, physical phenomena, and abstract ideas" are not patent eligible. *Bilski*, 561 U.S. at 594. Such concepts constitute the "basic tools of scientific and technological work," *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)), monopolization of which "might tend to impede innovation more than it would tend to promote it." *Id.*

The Supreme Court raised the bar on patent subject matter eligibility in *Alice Corp. v. CLS Bank*. 134 S. Ct. 2347, 2352 (2014). In *Alice*, the Supreme Court set forth a two-step process to determine whether a patent is invalid for claiming ineligible subject matter. First, this Court must "determine whether the claims at issue are directed to patent-ineligible concept," such as an abstract idea. *Alice*, 134 S. Ct. at 2355. In this first step, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). If the claims are directed toward an abstract idea, then in step two of the *Alice* test, this Court must determine whether the claims contain "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294). It is insufficient to add elements which "consist of well understood, routine, conventional activity," if such elements, "when viewed as a whole, add nothing significant

beyond the sum of their parts taken separately." *Mayo*, 132 S. Ct. at 1298. Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358.

The Supreme Court has recognized that information itself is intangible. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 537, 451 n.12 (2007). As a result, the Federal Circuit has found claims directed to some combination of collecting information, organizing information, analyzing information, and/or displaying the information to be abstract. *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 108, 1094-95 (Fed. Cir. 2016) (claims "directed to collecting and analyzing information to detect misuse and notifying a user when misuse is detected" were drawn to an unpatentable abstract idea); *In re TLI*, 823 F.3d at 611 (claims were "directed to the abstract idea of classifying and storing digital images in an organized manner"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (claims directed to an abstract idea because "[t]he advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions"); *Digitech Image Tech., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350-51 (Fed. Cir. 2014) (organizing existing data into a new form was directed to an abstract idea).

In addition, courts have found it helpful to assess claims against the policy rationale for Section 101. The Supreme Court stated that the "concern that undergirds [the] § 101 jurisprudence" is preemption. *Alice*, 134 S. Ct. at 2358. The concern underlying the abstract idea doctrine is that a patentee might "pre-empt" all ways of achieving results claimed by the patent. *Mayo*, 132 S. Ct. at 1293 (preemption would "tend to impede innovation more than would tend to promote it."). Thus, if a claim is so abstract so as to "pre-empt use of [the claimed] approach

in all fields, and would effectively grant a monopoly over an abstract idea," it is not patent

eligible. *Bilski*, 561 U.S. at 612. But, importantly, the inverse is not true: "[w]hile preemption

may signal patent ineligible subject matter, the absence of complete preemption does not

demonstrate patent eligibility." *FairWarning*, 839 F.3d at 1098 (internal quotation marks and

citation omitted).

Under the two-step *Alice* test and for subject-matter eligibility, and confirmed by a high

risk of preemption, the asserted claims are invalid.

**C.     The Patents-in-Suit Are Ineligible for Patent Protection.**

**1.     Step One: The Asserted Claims Are Directed to an Abstract Idea.**

The asserted claims are directed to the abstract idea of encoding or decoding data

formatted into a pattern. Claim 1 of the '882 patent, for example (set forth in full above), is "a

method of encoding data on a substrate as digital data," consisting of (1) formatting digital data

represented by a spot or an absence of a spot to form a pattern; and (2) displaying said pattern.

'882 patent, col. 2205:2-19. Claims directed to these basic concepts have been found to be

patent-ineligible abstracts ideas—most recently in *Recognicorp v. Nintendo Co*. In *Recognicorp*,

the Federal Circuit found the patent claim at issue in that lawsuit to be directed toward the

abstract idea of "encoding and decoding image data." *Recognicorp v. Nintendo Co*., No. 2016-

1499, 2017 U.S. App. LEXIS 7528, at *7 (Fed. Cir. Apr. 28, 2017). The claim at issue in

*Recognicorp* was:

> 1.  A method for creating a composite image, comprising:
>
> displaying facial feature images on a first area of a first display
> via a first device associated with the first display, wherein the
> facial feature images are associated with facial feature element
> codes;
>
> selecting a facial feature image from the first area of the first
> display via a user interface associated with the first device,

> wherein the first device incorporates the selected facial feature image into a composite image on a second area of the first display, wherein the composite image is associated with a composite facial image code having at least a facial feature element code and wherein the composite facial image code is derived by performing at least one multiplication operation on a facial code using one or more code factors as input parameters to the multiplication operation; and

> reproducing the composite image on a second display based on the composite facial image code.

*Id.* at *2-3. The Federal Circuit described the above claim as a "method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes." *Id.* at *7-8. The Federal Circuit found that this method reflected "standard encoding and decoding." *Id.* at *8.

The Federal Circuit then explained that encoding and decoding data is "an abstract concept long utilized to transmit information." *Id.* at *8. (citing to *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340-41 (Fed. Cir. 2017) (organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept)). The Federal Circuit provided several examples of long-utilized methods of encoding and decoding of data to transmit information: "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system." *Id.* at *8. Like the claim in *Recognicorp*, Claim 1 of the '882 patent is directed at a method of "encoding" and then "outputting" data, which is an abstract concept.

Kaldren's other asserted method claims are similarly abstract. Each of the other asserted method claims refers to standard computing steps directed to decoding or retrieving data. Claim 27 of the '427 patent (set forth in full above) is "a method decoding digital data from a pattern," consisting of (27.a) determining an attribute of at least one space of spot; and (27.b) decoding at least one bit of data from information obtained in the prior step. Claim 20 of the '807 patent (set

14

forth in full above) is "a method of retrieving an information resource," consisting of (20.a)

scanning a two dimensional pattern; (20.b) extracting an address for the information resource;

and (20.c) retrieving the information resource to present to a user. These claims only reflect

general decoding and transfer of data.

The one asserted apparatus claim is also abstract. Claim 1 of the '999 patent (set forth in

full above) is directed to a "communication system" that consists of functions for (1.a)

processing the decoding of a two dimensional pattern containing contact information; (1.b)

communicating using the contact information; and (1.c) networking for communicating within a

network of other computers. The reference to a network does not save claim 1 of the '999 from

abstraction. *Secure Mail Solutions LLC v. Universal Wilde, Inc.*, 169 F.Supp. 3d 1039, 1048

(C.D. Cal. 2016) (citing *Intellectual Ventures I v. Capital One Bank*, 792 F.3d 1363, 1366 (Fed.

Cir. 2015) ("An abstract idea does not become nonabstract by limiting the invention to a

particular field or use or technological environment, such as the Internet.")). Stripped of the

performance of standard computer tasks, Kaldren's asserted claims are thus directed to nothing

more than the abstract idea of encoding or decoding data. Thus, the asserted claims all fail the

first step of the *Alice* test.

### 2.    Step Two: The Asserted Claims Lack an Inventive Concept.

The asserted claims recite no inventive concept when considered as elements or as an

ordered whole. "A claim that recites an abstract idea must include additional features" which

"must be more than well understood, routing conventional activity." *Ultramercial*, 772 F.3d 715

(internal quotation marks omitted). Nothing in the claims "purport[s] to improve the functioning

of" a computer itself. *Alice*, 134 S. Ct. at 2359. No special or improved hardware equipment is

claimed. As the Supreme Court stated in *Alice*, "the relevant question is whether the claims here

do more than simply instruct the practitioner to implement [on a generic computer] the abstract idea of" encoding or decoding data. *Id*.  They do not.

In order to save a patent in step two, an inventive concept must be evident in the language of the claims. *Recognicorp*, 2017 U.S. App. LEXIS, at *11 (citing *Alice*, 134 S. Ct. at 2357 ("[W]e must examine the elements of the claim to determine whether it contains an 'inventive concept.'"); *see also Synopsis, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The 101 inquiry must focus on the language of the Asserted Claims themselves."). Any purported advantages of a claimed invention must be found in the claims themselves. *See Uniloc USA, Inc. v. AVG Techs., USA, Inc.*, No. 2:16-cv-00393-RWS, 2017 U.S. Dist. LEXIS 45125, at *23-24 (E.D. Tex. Mar. 28, 2017) (citing *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016)). Thus, tying purported advantages listed in the specification to certain limitations in a claim is insufficient.

Similar to the invalidated claim in *Recognicorp*, nothing in Kaldren's asserted claims "'transforms' the abstract idea of encoding and decoding into patent-eligible subject matter." 2017 U.S. App. LEXIS, at *12 (citing *Alice*, 134 S. Ct. at 2357). Here, the asserted claims do not recite any specific hardware. Indeed, the specification states that the alleged invention uses "off-the-shelf personal computers and peripherals." ('882 patent, col. 4, ll. 5-9; '427 patent, col. 4, ll. 20-24; '807 patent, col. 4, ll. 21-25; '999 patent, col. 4, ll. 23-26). Using conventional computer components that operate in the matter in which they are intended to operate does not give rise to patent eligibility. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015). Carrying out an abstract idea on a regular computer is not enough to make that abstract idea patent eligible. *Alice*, 134 S. Ct. at 2357.

87714806.4

The asserted claims do not disclose a particularized application of the abstract idea. The asserted method claims do not have elements "sufficient to ensure that the patent in practice amounts to significantly more than a patent on the [abstract idea] itself." *Mayo*, 132 S. Ct. at 1294. The claims use steps that are well-understood conventional activities for computers and network communication—"formatting," "outputting," "determining," "scanning," extracting," "retrieving," "processing" and "communicating." A general purpose computer and network infrastructure can perform these steps with minimal programming. These steps show no inventiveness in the claims. They merely describe the functions of the abstract idea itself, without particularity, which is simply not enough under step two. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (citing *Ultramercial*, 772 F.3d at 715-16).

The asserted claims simply purport to carry out long-standing, conventional encoding or decoding tasks using generic computing components and peripherals, such as printers and fax machines. The asserted claims also do not purport to improve the functioning of the computer or the claimed network. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014), ("That a computer receives and sends information over a network—with no further specification—is not even arguably inventive."). Nor are the asserted claims "necessarily rooted in computer technology in order to overcome a problem specifically arising out in the realm of computer network" as the Federal Circuit found in *DDR Holdings*. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed Cir. 2014) (claims that addressed the "Internet-centric problem" of third-party merchant advertisements that would "lure . . .  visitor traffic away" from a host website amounted to an inventive concept).

17

The asserted claims fare no better if the individual elements of the claims are considered in an ordered combination. The identical conclusion should be reached—the generic computing elements do not show an inventive concept. Even if the machine-or-transformation test is applied, which can provide a "useful and important clue" to the inventive step inquire, *Bilski*, 561 U.S. at 604, there is no inventive concept. The asserted claims do not transform a particular article into a different state or thing. *In re Bilski*, 545 F.3d 943, 945 (Fed. Cir.  2008). Instead, the claims are only tied to functions of "off-the-shelf personal computers and peripherals." Moreover, the specification of the Patents-In-Suit acknowledge that encoding and decoding data on one-dimensional and two-dimensional bar codes is in the prior art. (Dkt. No.1-1, Ex. A, col. 1:47-54; Dkt. No.1-2, Ex. Dkt. No.1-1, Ex. B, col. 1:59-66; Dkt. No.1-3, Ex. C, col. 1:60-67; Dkt. No.1-4, Ex. D, col. 1:65-66, 2:1-5; *see also* Ex. 1, U.S. Patent No. 5,726,435).

The asserted claims lack any sufficiently inventive concept to distinguish it from the abstract idea to which they are directed. Accordingly, the asserted claims also fail step two of the *Alice* test.

### 3.     Risk of Preemption Confirms the Invalidity of the Asserted Claims

The asserted claims are exceptionally broad without any meaningful limitations. As characterized by Kaldren in its Complaint, the asserted claims are so broad that they would preempt all use of the abstract idea of encoding or deciding data formatted into a pattern, which Kaldren has described as QR codes. As defined by Kaldren the asserted claims are "so abstract and sweeping" as to cover any and all uses of the underlying abstract idea in practically any field that uses a QR code. *See, e.g., Digitech Image Techs., LLC v. Elecs. For Imaging, Inc*., 758 F.3d 1344, 1351 (Fed. Cir. 2014) (claims to a general process for combining two data sets into a device profile were "'so abstract and sweeping' as to cover an all uses of a device profile" (quoting *Gottschalk*, 409 U.S. at 68)); *Becton, Dickinson & Co. v. Baxter Int'l Inc*., No. 1-14-cv-

00222, 2015 U.S. Dist. LEXIS 112834, at *13 (W.D. Tex. Aug. 3, 2015). ("[S]upervision and verification of a nonpharmacist's work is an abstract idea, one that amounts to a fundamental concept and longstanding practice of organizing human behavior applicable to many fields."). Indeed, the breadth of Kaldren's attempted reach is exemplified by the entities it has sued. In addition to General Mills, Kaldren has sued companies in a wide variety of industries including the financial, pharmaceutical, market research, and consumer electronics industries.[3] Thus, Kaldren's characterization of the asserted claims (accepted as true for this motion) would preempt all practical uses of a QR code in all fields.

The preemption risk is further exacerbated by the fact that QR codes were invented before any of the applications of any Patents-in-Suit were filed. *See* Ex. 1, U.S. Patent No. 5,726,435. Kaldren's characterization of the asserted claims as reading on QR codes is a prime example of an attempt to preempt basic aspects of American commerce while contributing nothing to the advancement of useful arts. Accordingly, the preemption risk of the asserted claims confirms that the claims are invalid under Section 101.

Fatal to all of the Patents-in-Suit is their alleged breadth as asserted by Kaldren. The asserted claims are directed to abstract ideas and lack an inventive concept. Because the Patents-in-Suit are invalid, General Mills respectfully requests that the Court grant its motion and dismiss Kaldren's Complaint with prejudice.

## V.   CONCLUSION

For the foregoing reasons, the Court should dismiss Kaldren's Complaint.

---

[3] *See supra* note 2.

May 3, 2017                                   Respectfully submitted,

                                              */s/ Melissa Smith*
                                              _____

                                              Marla Butler (MN 0397937)
                                              *Admission to District Pending*
                                              Alyssa N. Lawson (CA Bar No. 267107)
                                              *Admission to District Pending*
                                              Kristine Tietz (MN 0393477)
                                              *Eastern District of Texas Member*
                                              Robins Kaplan LLP
                                              800 LaSalle Ave, Suite 800
                                              Minneapolis, MN 55402
                                              Telephone:  (612) 349-8500
                                              Facsimile:  (612) 339-4181
                                              mbutler@robinskaplan.com
                                              alawson@robinskaplan.com
                                              ktietz@robinskaplan.com

                                              and

                                              Melissa Smith (Texas Bar No. 24001351)
                                              GILLAM & SMITH LLP
                                              303 S. Washington Avenue
                                              Marshall, Texas 75670
                                              Telephone: (903) 934-8450
                                              Facsimile: (903) 934-9257
                                              melissa@gillamsmithlaw.com

                                              **Attorneys for Defendant General Mills, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served, via the Court's CM/ECF system per Local Rule CV-5(a)(3) upon all counsel of record for Plaintiff, on May 3, 2017.

*/s/ Melissa Smith*
Melissa Smith

87714806.4